UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| PETER HIAM, | ) |
| Plaintiff, | ) |
| v. | ) |
| HOMEAWAY.COM, INC. | ) |
| Defendant. | ) |

## COMPLAINT

This is an action under Massachusetts consumer protection law arising out of a fraudulent offer to rent a non-existent vacation home in Belize that was carried on the defendant's well-known website, and in connection with which the defendant, for a fee, repeatedly aided and abetted the fraudster thereby allowing him or her to successfully abscond with at least $74,000 from various victims including the plaintiff. The plaintiff also seeks declaratory relief in regard to a forum selection provision in an agreement purporting to limit the forum in which the plaintiff might seek relief to a state or federal court in Travis County, Texas. This forum selection clause is buried in an illusory contract that the plaintiff "clicked" on in order to make use of the defendant's services.

## PARTIES AND JURISDICTION

1. The plaintiff, Peter Hiam ("Mr. Hiam"), is a citizen of Massachusetts domiciled in Cambridge.

2. The defendant, Homeaway.com, Inc. ("Homeaway" or "VRBO") is a corporation formed under the laws of Delaware with its principal place of business at 1011 W. Fifth

Street, Suite 300, Austin, Texas. Homeaway owns and operates a website known as VRBO.com ("VRBO"). Homeaway is a wholly-owned subsidiary of Homeaway, Inc. also a Delaware corporation.

3. Jurisdiction lies in this Court pursuant to 28 U.S.C. § 1332(a)(1) as both parties are citizens of different States and the amount in controversy, exclusive of interest and costs, exceeds $75,000.

## ALLEGATIONS APPLICABLE TO ALL COUNTS

4. VRBO is a website-based business available at all relevant times to all internet users in Massachusetts, including Mr. Hiam. Mr. Hiam sent and received all of the communications set forth herein while he was located in Massachusetts. Neither Homeaway nor VRBO maintains a place of business or keeps assets in Massachusetts.

5. In general, VRBO provides an online location for owners of vacation homes to offer their properties to the public for rental. VRBO charges a fee to those persons offering vacation rentals on its site. VRBO does not charge those persons, like Mr. Hiam, who use the site to find and rent vacation properties.

6. VRBO requires any person offering a property for rent, as well as any person who desires to and does rent a property offered on its site, to agree to a "contract" or "agreement" labeled Terms and Conditions ("T/Cs"). The most recent version of VRBO's T/Cs can be accessed at www.vrbo.com/info/termsandconditions.

7. The T/Cs are modified and changed by VRBO without prior notice at irregular times. The T/Cs in effect when Mr. Hiam made use of the VRBO site for the first time in April 2014 are no longer available to him. During the period of Mr. Hiam's interactions with VRBO from April 2014 to February 2015, another version of the T/Cs dated December 17,

2014 was published. Yet another version was published on September 15, 2015. The version currently accessible on the website is dated February 9, 2016. No indication is provided as to the changes made from one version to another in this 12-page single space "agreement."

8. Paragraph 21 in each version of the T/Cs states that "The version of the Terms became effective on the date set forth above and this version amends the version effective prior to such date." Paragraph 21 further provides: "Notification of any amendment will be posted on the Site by the indication of the last amendment date [sic] at the top of these Terms and will be effective immediately." No notice of any change is specifically provided to any of the persons who have "clicked" their agreement with the T/Cs prior to the change.

9. No provision in the T/Cs addresses or explains which version is the "legally binding agreement between [the user] and [VRBO]" (T/Cs at 3rd introductory paragraph) in the event that a user, like Mr. Hiam, "clicks" in April 2014 and continues to interact with VRBO about a fraudulent rental until late February 2015.

10. In the T/Cs, VRBO labels a person like Mr. Hiam a "traveler" as well as a "user" ("user/traveler"). Persons renting properties on the site are labeled "members" as well as "users" ("user/member"). Paragraph 21 of the T/Cs provides that VRBO "reserve[s] the right, in [its] sole discretion, to amend these Terms, in whole or in part, at any time, with or without your consent...." T/Cs also state that all users expressly agree that their consent is not necessary if a "proposed amendment" to the T/Cs is "clerical and/or non-substantive in nature." No explanation of the phrase "proposed amendment" is provided and, since any amendment is effective immediately upon posting, the notion of a "proposed amendment" makes little sense. A definition of "clerical" or "non-substantive" is also not provided.

11. If a user/member disagrees with a "proposed amendment" to the T/Cs that is "non-clerical" or "substantive" he or she may withhold consent and the T/Cs existing prior to the change will remain the terms of agreement between VRBO and the user/member. However, if a user/traveler, like Mr. Hiam, disagrees with a "non-clerical" or "substantive" change, the T/Cs are nonetheless modified and his only "remedy" is to discontinue using the site. No definition of "non-clerical" or "substantive" is provided. Paragraph 21.

12. Under the T/Cs VRBO reserves the right to "change, suspend or discontinue any aspect of the Site at any time, including the availability of any Site features, database, or content." Paragraph 21.

13. The T/Cs provide that every user: "irrevocably agree[s] and consent[s] that any cause of action you may submit in connection with your use of the Site or pursuant to these terms will be filed in the state or federal courts in Travis County, Texas which you acknowledge, consent to and agree will be the exclusive forum and venue for any legal dispute between you and [VRBO]." Paragraph 18.

14. The T/Cs provide that "any dispute between you and [VRBO] will be governed by the laws of the State of Texas, without regard to conflict of laws principles." Paragraph 18.

15. VRBO offers to every prospective user, including Mr. Hiam, a basic rental guaranty in an amount up to $1,000. The terms and conditions of this guarantee are accessible at www.homeaway.com/info/about-us/legal/terms-conditions/basic_rental_guarantee.

16. VRBO's rental guaranty protects against "Internet Fraud" which is defined as a "rental property that is listed on a [VRBO] Site where (i) such listing is subsequently

4

determined to be fraudulent, in Homeaway's sole discretion...." Basic Rental Guarantee at Para. 2.

17. Pursuant to its Basic Rental Guarantee, VRBO has a "customer support" department which investigates complaints of listing fraud and decides in its "sole discretion" whether a listing is fraudulent.

18. VRBO offers to every prospective user/traveler, including Mr. Hiam, the benefits of its Homeaway Privacy Policy. The terms and conditions of this Privacy Policy are accessible at www.vrbo.com/info/privacy.

19. Pursuant to its Privacy Policy, VRBO reserved the right to disclose information it had gathered about a user/member to others, including Mr. Hiam, to "enforce [VRBO's] policies" or "in connection with actual or proposed litigation...." Privacy Policy at page 2.

20. In April 2014, Mr. Hiam's son, at his direction, visited the VRBO site and saw a vacation rental property identified as "Jewels of Belize Estate" ("JoB Listing"). The VRBO listing number was 568492.

21. The JoB listing described the rental property as a spectacular beachfront estate located at 640 North Ridge Estate Way, Sanctuary Belize, Placentia, Belize. The property could hold up to 14 people and included a chef, transportation around Belize and other amenities. The rental price for the 1-week period from December 27, 2014 to January 3, 2015 was $46,565.00.

22. Mr. Hiam was planning a large family gathering and after making further inquiry through VRBO, he decided to rent the property.

23. The JoB Listing was a complete fraud: there is no such property located at the listing address. Indeed, there is no such address in Belize at all. The pictures appearing on the VRBO listing were stock pictures appropriated from another website.

24. The purported "owner" of the fictive property was Jewels of Belize Corporation ("JoB Corp."). JoB Corp. is a corporation organized under the laws of New York. It was formed on April 17, 2014 by an attorney incorporator who has formed over 243,000 business corporations. No information about the owners or officers of JoB is available. The business address of JoB Corp. is the attorney incorporator's address at 1 Maiden Lane, New York, N.Y.

25. On April 21, 2014 by email a person provided Mr. Hiam wiring instructions so that he could wire 50% of the total rental amount and secure the reservation. The account was in the name of "Jewels of Belize" and was with the TD Bank. Mr. Hiam wired $23,282.50 to that account on April 22, 2014.

26. In response, by email a person provided Mr. Hiam a set of documents including a booking agreement for the period from December 27 to January 3, 2015, an invoice and other material. The invoice indicated that a second payment in the amount of $23,282.50 was due on or before September 27, 2014.

27. Unknown to Mr. Hiam, another individual ("John Doe") had used the VRBO site to rent the same non-existent property for a portion of the same time period. John Doe mailed a check for 50% of the rental price -- in his case, $27,737.55 -- to Jewels of Belize Corp. at its New York address and this check was cashed on April 25, 2014 just 3 days after Mr. Hiam had wired $23,282.50 *in order to reserve the same property for a portion of the same time period.*

28. After John Doe had made inquiries about the precise location of the rental and was dissatisfied with the responses, he exercised his "right" within 90 days of his reservation to cancel it. When no refund was made available and he could not contact the purported owner of the property by phone or by other means, John Doe alerted VRBO's customer service and requested assistance. John Doe communicated with VRBO's customer service about the JoB Listing and the details of his situation sometime in August or September 2014. John Doe received no immediate response.

29. On October 2, 2014, Mr. Hiam wired his second payment in the amount of $23,282.50 to the same corporate account.

30. Although he had been told that he would be contacted within 30 days of the start of the rental period, Mr. Hiam heard nothing further at any time from any person identifying themselves with JoB Corp. or the JoB Listing. Emails he sent went without response and the phone number he had been using was reported to be disconnected.

31. On October 2, 2014, VRBO's customer service ("Jill") contacted John Doe and identified his case number as 11925447. John Doe was asked (again) to provide the property's owner name and other basic information, which he did. After hearing nothing further, John Doe contacted VRBO's customer service again. Customer service (this time "Aj") responded with an additional case number: 12681458 and requested the same information. Again, on December 18, 2014 John Doe provided it.

32. Yet again on January 6, 2015 VRBO's customer service ("Cheryl") provided John Doe a third case number (11925447) and requested the same information.

33. Finally, on February 6, 2015, John Doe received the following email from VRBO's customer service ("Aaron"):

I'm sending this email to follow up to our call today. *I had two of my supervisors review this case, including Chris who has worked with the whole situation at length.* We were able to determine that *the Company was legitimate* and that *the property manager was authorized to rent the listing.* We have also *verified that the development does exist.* Unfortunately, there is no way HomeAway can predict that a property manager who was legitimately renting out his property will suddenly decide to stop honoring his reservations. Therefor [sic] we are unable to provide assistance via the Basic Rental Guarantee. At this point, if you are no longer able to contact the property owner, *the issue will have to be addressed with the authorities. You can also report the issue on the FBI's internet crimes website.* (emphasis added).

34. In response to this email, John Doe specifically asked "Aaron" for the location of the JoB Listing since he could not find it. He also asked for the names, phone numbers and addresses for the owner or property manager so that he could contact someone in an effort to recover his $27,000 deposit. On February 8, 2015, VRBO customer service ("Ryan") responded stating simply: "Unfortunately, we are not able to provide our member's addresses due to privacy concerns and they must be provided to you by the member." Ryan then provided John Doe the same disconnected phone number which he had earlier repeatedly provided to VRBO.

35. On December 12, 2014, Mr. Hiam's son, at his direction, contacted VRBO's customer service about the fraudulent JoB Listing. Customer service ("Trinity") responded on that same day identifying Mr. Hiam's case number as 12632252.

36. On December 17, 2014 VRBO's customer service ("Aimee") emailed Mr. Hiam's son and stated:

> I tried calling back earlier this afternoon to talk about what we've *found investigating this complex situation*.... Unfortunately, I was also unable to get ahold [sic] of the owner for VRBO listing 568492. I will be reaching out to the owner via email [sic] strongly encourage him to at least contact you. As of now *we will be sending notifications to you and other potential travelers* wanting to book this property that we are unable to determine the status of this property. Although disconnected phone numbers and generally not being able to reach an owner is not a good sign or best practices, *we*

> *have determined this owner to be a real person who has had successful stays in the past*, which does not meet our definition of fraud. (emphasis added).

On December 18, 2014, in response to this email Mr. Hiam sent an email to "Aimee" asking, *inter alia*, for the identity of the "real person" that VRBO determined was the owner. No response was received. A week later, Mr. Hiam sent another email to "Aimee" asking her to reply to his December 18 email.

37. No response of any kind was received from VRBO until February 23, 2015 when "Aaron" sent an email to Mr. Hiam and his son and stated:

> I apologize we have not responded sooner, however, we just recently received your reply. [sic] We appreciate your patience while we conduct *our investigation*. Unfortunately, due to privacy concerns, we are unable to provide additional information about the property owner beyond what was published on the listing.... We removed the listing on 12/17/14 because we are uncertain of the availability of the property and *have not received a response from the owner or property manager*. According to HomeAway, we define a fraudulent listing as a listing created by a person who has no authorization to list the property, or a listing created for a property that does not exist. In this situation, the property owner who made the listing *did have full authorization to rent out the property* and *the property is legitimate*. (emphasis added).

38. After unsuccessful efforts to enlist the assistance of the authorities in an investigation of this fraud, Mr. Hiam had a letter sent to VRBO dated August 18, 2015 specifically reciting the facts set forth above and requesting documents and other information including (a) any information about the identity of the persons behind the JoB Listing; (b) correspondence between VRBO and JoB Corp., (c) the payment arrangements between JoB Corp. and VRBO, (d) all documents generated during VRBO's purported investigations of John Doe's and Mr. Hiam's cases, (e) all documents on which VRBO relied in making the representations to both John Doe and Mr. Hiam that the "property is legitimate," and that the

owner "has had successful stays in the past" and (f) all other complaints received by VRBO in connection with the JoB Listing.

39. On September 17, 2015, VRBO responded by email refusing to provide any information.

## COUNT ONE: DECLARATORY RELIEF

40. Plaintiff realleges as if set forth in full herein each and every allegation in paragraphs 1 through 39 above.

41. The T/Cs state that the exclusive forum for Mr. Hiam to bring forward a claim against VRBO arising from his use of the site is a state or federal court in Travis County, Texas.

42. Under the law governing the T/Cs in accordance with the choice of law set forth therein (i.e. Texas law), that agreement is an illusory contract and as a consequence the forum selection provision set forth in it is not enforceable.

43. A controversy has arisen between the parties as to whether Mr. Hiam is free to seek relief against VRBO in this Court or otherwise must file any such claim in a state or federal court in Travis County, Texas.

44. A declaration of the rights and obligations of the parties is required so that the proper forum for this dispute may be determined and Mr. Hiam's claims adjudicated.

## COUNT TWO: UNFAIR OR DECEPTIVE TRADE PRACTICES

45. Plaintiff realleges as if set forth in full herein each and every allegation in paragraphs 1 through 44 above.

46. VRBO aided and abetted those persons using the JoB Listing in defrauding Mr. Hiam by giving substantial assistance or encouragement to them knowing that those persons were engaged in a fraud.

47. Specifically, VRBO assisted or encouraged this fraud by:

(1) holding itself out as providing a reasonable investigatory process to detect, prevent and compensate for fraudulent use of its site while in fact conducting sham investigations, and specifically failing to alert Mr. Hiam before he wired his second payment in the amount of $23,282.50 on October 2, 2014 that John Doe had earlier identified the JoB Listing as fraudulent or potentially fraudulent;

(2) expressly adopting the fraudulent content set out in the JoB Listing in private emails sent to both John Doe and to Mr. Hiam that asserted falsely that the Listing was not fraudulent, that the non-existent property did exist, that the "Company" was legitimate, that the property manager had "full authorization" to rent this non-existent listing, that the "owner" of this non-existent property is a "real person who has had successful stays in the past", and that there was no "fraud" since the "property is legitimate"; and

(3) violating its own Privacy Policy by refusing repeatedly to provide to both John Doe and Mr. Hiam information essential to their efforts to timely track down the fraudsters and recover their funds, and by refusing to provide other information, including payment arrangements between VRBO and the fraudsters that would enable Mr. Hiam to locate and recover his funds.

48. VRBO has refused to acknowledge that the JoB Listing was a fraudulent listing thereby denying and repudiating its obligations under its Basic Rental Guarantee to make

John Doe and Mr. Hiam whole at least to the extent of VRBO's obligations under that Guarantee.

49. VRBO has refused to disclose its payment arrangements with the fraudsters and specifically has refused to disclose the payments it has received arising from the JoB Listing even though VRBO has been unjustly enriched by the receipt and retention of these payments.

50. Each of the acts and omissions set out in Paragraphs 46 through 49 is an unfair or deceptive trade practice prohibited by M.G.L. c. 93A.

51. Mr. Hiam has been injured by the defendant's conduct.

## COUNT THREE: CONCERT OF ACTION

52. Plaintiff realleges as if set forth in full herein each and every allegation in paragraphs 1 through 51 above.

53. VRBO knew no later than August or September 2014 that the JoB Listing was fraudulent and that fraudsters using its site were defrauding John Doe and Mr. Hiam.

54. Rather than conduct a legitimate investigation into the two almost simultaneously received fraud complaints, VRBO employed its customer service function to delay and obfuscate efforts of John Doe and Mr. Hiam to track down the persons who had defrauded them.

55. By concealing the identities of the fraudsters after learning of their fraud in direct contraction to their own Privacy Policy, by expressly adopting the fraudulent content of the JoB Listing in private communications to both John Doe and Mr. Hiam, and by engaging in these activities, at least in part, so that it could: (a) retain the payments received from the fraudsters for hosting the fraudulent listing and (b) refuse to honor its obligations under its

Basic Rental Guarantee, VRBO acted in concert with those persons who defrauded Mr. Hiam.

56. VRBO's actions caused or substantially contributed to cause Mr. Hiam's injuries and losses.

## PRAYER FOR RELIEF

THEREFORE, plaintiff respectfully requests and prays for a judgment providing the following relief:

1. a declaration of the rights and obligations of the parties specifically as to the non-enforceability of the forum selection provision set forth in VRBO's T/Cs;

2. for damages in an amount to be determined by the Court to compensate Mr. Hiam for his loss of $46,565.00;

3. for double or treble those damages in light of the egregious character of the defendant's actions;

4. for interest on all amounts so determined;

5. for an award of reasonable attorney's fees and expenses in connection with this action; and

6. for any and all other relief as this Court may deem necessary and appropriate.

Respectfully submitted,

PETER HIAM

By his attorney

/s/ John Traficonte
John Traficonte, BBO #541931
10 Mount Auburn Street
Watertown, Massachusetts 02472
Tel:(617) 913-5918
Fax: (617) 926-5448
johntraficonte@gmail.com

Dated: February 19, 2016