UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

```
_____
                                        )
PETER HIAM and                          )
BROOKE HUTCHENS,                        )
                                        )
                 Plaintiffs,            )     CIVIL ACTION
                                        )     NO. 16-10360-WGY
            v.                          )
                                        )
HOMEAWAY.COM, INC.,                     )
                                        )
                 Defendant.             )
_____ )
```

YOUNG, D.J.                                          July 27, 2017

### MEMORANDUM & ORDER

## I.   INTRODUCTION

Peter Hiam ("Hiam") and Brooke Hutchens ("Hutchens") (collectively, the "Plaintiffs") sued HomeAway.com, Inc. ("HomeAway") under Massachusetts and Colorado consumer protection laws, as well as common law aiding and abetting fraud, in connection with vacation rentals posted on HomeAway's website.  HomeAway moved for summary judgment, asserting protections for "interactive computer service" providers under the Communications Decency Act ("CDA").  For the reasons stated below, this Court GRANTS HomeAway's motion for summary judgment.

### A.   Procedural History

On February 19, 2016, Hiam sued HomeAway.  Compl., ECF No. 1.  Hiam amended his complaint twice.  Second Am. Compl.

("SAC"), ECF No. 31.  On December 14, 2016, the Court added
Hutchens as a party to the action.  HomeAway answered, asserting
the affirmative defense that the CDA bars the Plaintiffs'
claims.  Answer Second Am. Compl. 20, ECF No. 33.  On February
1, 2017, HomeAway moved for summary judgment, Def. HomeAway.com,
Inc.'s Mot. Summ. J., ECF No. 38, and the parties submitted
briefs and supporting statements of facts.  Mem. Law Supp.
HomeAway.com, Inc.'s Mot. Summ. J. ("Def.'s Mem."), ECF No. 39;
HomeAway.com, Inc.'s Statement Undisputed Material Facts Supp.
Mot. Summ. J. ("Def.'s Facts"), ECF No. 40; Pls.' Opp'n Def.'s
Mot. Summ. J. ("Pls.' Opp'n"), ECF No. 45; Pls.' Statement
Undisputed Facts Opp'n Def.'s Mot. Summ. J. ("Pls.' Facts"), ECF
No. 46; Reply Mem. Law Supp. HomeAway's Mot. Summ. J. ("Def.'s
Reply"), ECF No. 56; Pls.' Surreply Def.'s Reply Mem. Re Summ.
J. ("Pls.' Surreply"), ECF No. 60.  After an oral hearing, the
Court took the motion under advisement, Electronic Clerk's
Notes, ECF No. 64, and the parties filed post-argument briefs,
Pls.' Post-Arg. Mem. Re Summ. J., ECF No. 66; Reply Mem. Law
Supp. HomeAway's Mot. Summ. J., ECF No. 69.

    **B.  Facts Alleged**

        **1.  HomeAway's Basic Rental Guarantee, Terms and
Conditions, and Privacy Policy**

HomeAway is a Delaware corporation that owns a website with
the domain name, VRBO.com ("VRBO").  Def.'s Facts ¶¶ 1, 2.

VRBO, which stands for "Vacation Rentals By Owner," is a forum on which users may list properties for rent or rent properties from others.  Id. ¶ 3.  The website contains language setting forth certain HomeAway policies, conditions, and guarantees in connection with using the website.

First, the website offers a Basic Rental Guarantee ("Guarantee") to eligible users, referred to in the Guarantee as "registered traveler[s]".  Aff. Amanda McGee, Ex. 4, Decl. Brittany Miers, Attachment A ("Basic Rental Guarantee") 4, ECF No. 41-4.[1]  Pursuant to the Guarantee's terms, HomeAway will reimburse qualifying users up to $1,000 "where such funds are lost or misappropriated as the result of Internet Fraud."  Id. at 5.  The Basic Rental Guarantee defines internet fraud as:

> a deposit or payment by a Registered Traveler for a
> vacation rental . . . where such listing is
> subsequently determined to be, in HomeAway's
> reasonable discretion, fictitious or illegitimate
> because the holiday rental property (i) does not exist
> as a property available for rent, or (ii) was
> advertised with the intention of defrauding travelers
> . . . .

Id.  The Guarantee further sets out several requirements to qualify for the reimbursement, two of which are relevant here. First, the user must submit a request form within the allotted period.  Id. at 6-7.  Second, the property owner or manager and

---

[1] Because ECF No. 41-4 contains three separate documents, for the sake of simplicity, this opinion cites to the continuously paginated ECF document page numbers.

PayPal, bank, payment provider, or credit card issuer must deny
the user reimbursement.  Id.  The Guarantee stipulates that
HomeAway "DOES NOT protect against . . . [p]ayments . . . made
to any property owner or manager via . . . instant wire transfer
services."  Id. at 5.  It does not state that HomeAway pre-
screens or monitors rental postings.  Rather, the Guarantee
explains that it "is intended to provide protection against
Internet Fraud . . . ."  Id. at 4.  Generally, the Guarantee
outlines the registered traveler's obligations to furnish
HomeAway with relevant information while the company considers
the user's reimbursement request.  Id. at 6-8.

Second, HomeAway's Terms and Conditions explicitly disavow
"any responsibility for[] the confirmation for each user's
purported identity."  Aff. Amanda McGee, Ex. 4, Decl. Brittany
Miers, Attachment B ("Terms & Conditions") 13, ECF No. 41-4.
The Terms and Conditions also strongly recommend -- at least
twice repeating -- that travelers communicate directly with
property owners, in addition to "tak[ing] other reasonable
measures to assure yourself of the other person's identity and
. . . of the property and relevant details of your booking
. . . ."  Id.  The Terms and Conditions state that while
HomeAway "take[s] certain measures with a goal to assist users
to avoid potentially fraudulent or other illegal activity of
which [it] become[s] aware, [HomeAway] assume[s] no liability or

obligation to take any such measures or actions." Id. at 11.

HomeAway further insulates itself by adding:

> We have no duty to pre-screen content posted on the
> Site by members, travelers or other users . . . . All
> property listings on the Site are the sole
> responsibility of the member . . . and we specifically
> disclaim any and all liability arising from the
> alleged accuracy of the listings . . . . We do not
> represent or warrant that any of the . . . content
> . . . published on the Site is accurate or up-to-date
> . . . .

Id. at 14.  Again, HomeAway stated that it "assume[s] no

responsibility to verify property listing content or the

accuracy of the location.  Members are solely responsible for

ensuring the accuracy of listing content . . . and travelers are

solely responsible for verifying the accuracy of such content

. . . ."  Id. at 15.  The disclaimer section emphasizes (in

bold, capital letters),

> To the fullest extent permissible by law, we make no
> representations or warranties of any kind whatsoever
> for the content on the site . . . .  Further, we
> expressly disclaim any express or implied warranties
> . . . .  We have no control over and do not guarantee
> (other than pursuant to any guarantee the [sic] may be
> offered on the site) . . . the truth or accuracy of
> any listing or other content . . . .

Id. at 18.

Third, HomeAway's Privacy Policy outlines how, when, and if

HomeAway will disclose users' personal information.  Aff. Amanda

McGee, Ex. 4, Decl. Brittany Miers, Attachment C ("Privacy

Policy") 32, ECF No. 41-4 (emphasis added).  The relevant

provision states that HomeAway "may disclose your personal data to enforce our policies . . . ." Id.

### 2. The Jewels of Belize

In April 2014, Hiam[2] and Hutchens attempted to rent the vacation property known as the "Jewels of Belize Estate." Def.'s Facts ¶¶ 36, 54. Both Hiam and Hutchens communicated directly with an individual using the Jewels of Belize email account associated with the listing. Id. ¶¶ 36-37. To reserve the property, both Hiam and Hutchens followed the directions provided by the Jewels of Belize "agent" and wired an initial deposit for fifty percent of the total rental amount. Id. ¶¶ 41, 55. On April 22, 2014, Hiam wired his security deposit of $23,282.50 to a TD Bank account. Id. ¶ 41. Hutchens similarly followed the wiring instructions, transferring $26,343.75 to the account on April 24, 2014. Id. ¶ 55. Hiam wired his second payment on October 2, 2014; Hutchens, on July 18, 2014. Id. ¶¶ 41, 55.

After wiring his second installment, Hiam heard nothing further from anyone associated with the Jewels of Belize rental

---

[2] Hiam asked his son to research destinations for a family vacation. Hiam's son saw the Jewels of Belize listing on VRBO. Def.'s Facts ¶¶ 27-29. Both Hiam and his son communicated with Jewels of Belize and then with VRBO customer support in connection with their fraud complaint. See Aff. Amanda McGee, Ex. 5 ("Dayva Graham Correspondence"), ECF No. 41-5. Therefore, for the purposes of this analysis, the Court does not distinguish between Hiam and his son, a non-party.

property.  Id. ¶ 42.  Having heard nothing from the property
manager, Hiam contacted VRBO's customer support about two weeks
before his reservation was scheduled to begin.  Id. ¶ 43.
Customer support informed Hiam that they too could not reach the
property owner due to the disconnected phone number but that the
company had "determined this owner to be a real person who . . .
had successful stays in the past, which does not meet
[HomeAway's] definition of fraud."  Aff. Amanda McGee, Ex. 7
("VRBO E-mails") 2-3, ECF No. 41-7.  In response, Hiam requested
the owner's identity.  Id. at 3.  Several weeks later, a U.S.
Trust and Security Specialist expressed gratitude for Hiam's
"patience [during the] investigation," but denied Hiam's request
for the Jewels of Belize owner's information "due to privacy
concerns."  Id. at 1.

    While Hiam did not hear from anyone associated with the
Jewels of Belize property after wiring his second payment,
Hutchens received a call from "Dayva" on October 19, 2014.
Def.'s Facts ¶ 57.  Dayva told Hutchens that since the estate
was no longer available, Jewels of Belize arranged for
alternative accommodations at a nearby hotel resort.  Id. ¶ 57.
A few days into Hutchens's trip, the hotel informed Hutchens
that Jewels of Belize's checks covering Hutchens's hotel
reservations bounced, and the hotel demanded payment from
Hutchens.  Id. ¶ 58.  Hutchens complied.  Id. ¶ 59.  The hotel

later reimbursed Hutchens "based on payments made to the hotel by Jewels of Belize." Id. ¶ 60. Upon her return, Hutchens reported the incident to VRBO. Id. ¶ 61; Aff. Amanda McGee, Ex. 8 ("VRBO Property Complaints") 8, ECF No. 41-8. After searching for the property location on Google Earth, VRBO responded that those "images have a general date of 2014. The image could be two weeks old, or it could be 11 months old." Aff. John Traficonte, Ex. 1 ("Massara Case Comments") 3, ECF No. 48-1.

Based on these events, Hiam and Hutchens brought this action pursuant to Massachusetts and Colorado consumer protection statutes and common law aiding and abetting fraud. SAC ¶¶ 73-93, 98-106. Hiam alleges unfair or deceptive trade practices under Massachusetts General Laws Chapter 93A (count II) and associated consumer protection regulations (count VII). Id. ¶¶ 73-80, 102-06. He also raises a concert of action claim (count III). Id. ¶¶ 81-85. Jointly, Hiam and Hutchens assert a fraud and misrepresentation claim (count IV), id. ¶¶ 86-93, and a claim of unjust enrichment (count V), id. ¶¶ 94-97. Hutchens brings a claim for deceptive trade practices under Colorado's consumer protection law (count VI). Id. ¶¶ 98-101. The Plaintiffs also seek declaratory relief to clarify HomeAway's forum-selection clause and one-year claims limitation period as enumerated in HomeAway's Terms and Conditions (count I). Id. ¶¶ 69-72.

## II.   ANALYSIS

### A.   Standard of Review

"Summary judgment is appropriate when 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'"  Medina-Munoz v. R.J. Reynolds Tobacco Co., 896 F.2d 5, 7-8 (1st Cir. 1990) (citing Fed. R. Civ. P. 56(c)).  "[T]he mere existence of some alleged factual dispute between the parties will not defeat" a summary judgment motion.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986) (emphasis in original).  Rather, a factual dispute must be both genuine and material.  Id. at 248.  When determining whether there is a genuine and material factual dispute, the court construes the record and draws all reasonable inferences in the nonmoving party's favor.  Id. at 255.  Where the moving party bears the burden of proof, absent binding admissions by the non moving party, summary judgement is inappropriate as the fact finder could reject the evidence proffered by the moving party.  See Reeves v. Sanderson Plumbing, 530 U.S. 133, 150-51 (2000).

**B.   Statutory Immunity under Section 230 of the Communications Decency Act**

Section 230 of the Communications Decency Act, 47 U.S.C. § 230, provides "broad immunity to entities . . . that facilitate the speech of others on the Internet."  Universal Commc'n Sys., Inc. v. Lycos, Inc., 478 F.3d 413, 415 (1st Cir. 2007).  To further this objective, "[n]o provider or user of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider," 47 U.S.C. § 230(c)(1), and "[n]o cause of action may be brought and no liability may be imposed under any State or local law that is inconsistent with this section," id. § 230(e)(3).  The CDA, therefore, precludes a state law claim where three criteria are met: "(1) [the entity] is a 'provider or user of an interactive computer service'; (2) the claim is based on 'information provided by another information content provider'; and (3) the claim would treat [the entity] 'as the publisher or speaker' of that information."  Universal Commc'n Sys., Inc., 478 F.3d at 418.

As a result, "lawsuits seeking to hold a service provider liable for its exercise of a publisher's traditional editorial functions -- such as deciding whether to publish, withdraw, postpone or alter content -- are barred."  Zeran v. America Online, Inc., 129 F.3d 327, 330 (4th Cir. 1997).  In addition to

these "traditional editorial functions" adopted by the Fourth
Circuit, the First Circuit has added website construction and
operation, including a website operator's "decisions about how
to treat postings generally." Universal Commc'n Sys., Inc., 478
F.3d at 422.  "A key limitation in Section 230, however, is that
immunity only applies when the information that forms the basis
for the state law claim has been provided by 'another
information content provider.'" Id. at 419 (quoting 47 U.S.C. §
230(c)(1)).  Therefore, if the Court determines that the
Plaintiffs' causes of action are based on HomeAway's own
content, CDA immunity will not attach.  See id. ("[A]n
interactive computer service provider remains liable for its own
speech.").[3]

     In asserting CDA immunity, HomeAway argues that it "does
not create or develop information content," Def.'s Mem. 11, and
that it was in fact Jewels of Belize that created the content of
the listing at issue.  Id.  The Plaintiffs respond that their
"claims are based on 'information content' expressly provided by

_____

     [3] Further, Section 230 immunity only attaches to
"interactive computer service" providers.  47 U.S.C. § 230(f)(2)
("[A]ny information service, system, or access software provider
that provides or enables computer access by multiple users to a
computer server, including specifically a service or system that
provides access to the Internet.").  It is undisputed that
HomeAway meets this criterion, as VRBO.com "enables computer
access by multiple users to a computer server," specifically the
server that hosts the travel site.  Id.

[HomeAway] on its website and on its own actions taken in connection with that 'information content.'  Specifically, each challenged claim is predicated, in whole or in significant part, on the consumer guarantee by [HomeAway] of each of its listings."  Pls.' Opp'n 7.

Although HomeAway is entitled to statutory immunity on some claims, the Plaintiffs are able to circumvent the CDA on other claims by basing those claims on HomeAway's Basic Rental Guarantee and Privacy Policy.  Hiam and Hutchens assert that through those policies, HomeAway promises (1) a reasonable investigatory process into complaints of fraud and (2) that the website undertakes some measure of verification for each posting.  See Moving & Storage, Inc. v. Panayotov, No. 12-12262-GAO, 2014 WL 949830, at *2 (D. Mass. Mar. 12, 2014) (O'Toole, J.) ("[T]he plaintiffs treat the third-party customers as the publishers or speakers and bring 'causes of action based not on [the defendants'] publishing conduct but on [their] representations regarding such conduct, [which] would not be immunized under [the CDA].'" (alterations in original) (quoting Levitt v. Yelp! Inc., 2011 WL 5079526, at *9 (N.D. Cal. 2011))).  The Plaintiffs also successfully cast their fraud and misrepresentation claim in terms of HomeAway-authored information content and HomeAway's actions in connection with that content.  Pls.' Opp'n 7.  Similarly, HomeAway is not immune

from liability for unfair or deceptive trade practices brought under Massachusetts and Colorado consumer protection statutes, as these allegations seek to hold HomeAway "liable for its own speech." Universal Commc'n Sys., Inc., 478 F.3d at 419.

Nevertheless, the claims that do escape the CDA's reach cannot withstand summary judgment. First, the Plaintiffs suffer from a sufficiency of evidence problem because they cannot prove an essential element of their remaining claims. Second, allegations based on HomeAway's Privacy Policy present no trial-worthy dispute. Third, as the Plaintiffs have alternative remedies at law, their unjust enrichment claim also fails as matter of law. For these reasons, the Court GRANTS summary judgment in favor of HomeAway.[4]

---

[4] The Plaintiffs argue that HomeAway's motion relates only to the issue of CDA immunity. Pls.' Opp'n 1-2, 11 n.9. According to the Plaintiffs, then, the Court ought not "move[] up" the issue of whether HomeAway makes an implied promise in the Guarantee, and if there is such a representation, the scope of that promise. Pls.' Surreply 1-2. True, HomeAway dedicates its dispositive motion, almost exclusively, to the issue of statutory immunity. HomeAway's strategic decision in its brief does not, however, narrow its motion for summary judgment to one for partial summary judgment. See Small Justice LLC v. Xcentric Ventures LLC, 99 F. Supp. 3d 190, 200-01 (D. Mass. 2015) (Casper, J.) (ruling that the plaintiffs failed to meet the requirements of a Chapter 93A claim despite the defendant only presenting a CDA immunity argument against this claim in its motion for summary judgment). Therefore, after determining whether the CDA bars any of the Plaintiffs' claims, the Court rules, as matter of law, whether the language of the Guarantee carries the weight the Plaintiffs import.

### C.   Unfair or Deceptive Trade Practices under Massachusetts General Laws Chapter 93A (Counts II and VII) (Hiam)

Hiam alleges five acts that he considers unfair or deceptive: (1) HomeAway held "itself out as providing a reasonable investigatory process to detect, prevent and compensate for fraudulent use of its site while conducting sham investigations," SAC ¶¶ 75(1), 78, (2) HomeAway adopted the fraudulent content in the Jewels of Belize rental listing in private emails, id. ¶ 75(2), (3) HomeAway failed to honor its obligations under its Basic Rental Guarantee by refusing to acknowledge that the Jewels of Belize listing was fraudulent, id. ¶ 76, (4) HomeAway violated its Privacy Policy by refusing to disclose user information and payment arrangements, id. ¶¶ 75(3), 77, and (5) HomeAway violated the Attorney General's Travel Services regulations, which is a per se Chapter 93A violation, id. ¶¶ 103-05.

Massachusetts consumer protection law prohibits "unfair or deceptive acts or practices in the conduct of any trade or commerce," Mass. Gen. Laws ch. 93A, § 2(a), but does not itself "provide standards for determining what constitutes an unfair or deceptive act." Boyle v. International Truck & Engine Corp., No. 01-10039-DPW, 2002 WL 823810, at *6 (D. Mass. Apr. 23, 2002) (Woodlock, J.). To find a Chapter 93A violation, courts examine: "1) whether the practice falls within the penumbra of

common-law, statutory, or other established concepts of unfairness; 2) whether it is immoral, unethical, oppressive, or unscrupulous; and 3) whether it causes substantial injury to consumers . . . ." Id. (citing PMP Assocs., Inc. v. Globe Newspaper Co., 366 Mass. 593, 596 (1975)).  Therefore, count VII alleging violations of the Attorney General's Travel Services regulations is essentially a reiteration of count II for unfair or deceptive trade practices under Chapter 93A.  These regulations are "practice[s] [that] fall[] within the penumbra of . . . statutory . . . concepts of unfairness." Id.

### 1. Treating HomeAway as a "Seller of Travel Services" under Massachusetts Consumer Protection Regulations is Barred by the CDA (Count VII) (Hiam)

As a "[v]iolation of any provision of 940 CMR 15.00 shall be an unfair or deceptive act or practice, under M.G.L. c. 93A, § 2(a)," 940 Mass. Code Regs. 15.01(1), count VII is analyzed in tandem with count II.  Chapter 15 of the Attorney General's consumer protection regulations pertains to the travel services industry.  A "seller of travel services" is a "business entity . . . that sells, provides, contracts for, or arranges travel services, or that represents that it sells, provides, contracts for, or arranges travel services . . . ." Id. 15.02.  The regulations define "travel services" as "the provision of . . . other goods or services related to recreational . . . travel,

including but not limited to lodging, food, guided tours, or instruction." Id.

Here, VRBO.com is a venue through which third parties can post rental properties. Def.'s Facts ¶ 3. The website "offer[s] online booking or other tools or services to allow users to communicate with each other and enter into rental agreements or other transactions." Terms & Conditions 10. HomeAway specifically disavows being a party to any transaction between users. Id. It further acknowledges that it "do[es] not own or manage, nor can [it] contract for, any vacation rental property listed on [the] Site." Id.

Despite these renunciations, Hiam believes HomeAway qualifies as a seller of travel services. Because, however, HomeAway merely provides a venue for others to sell or provide lodging, but does not provide the actual facility where people can "lodge," HomeAway does not fit within the statutory definition of a "seller of travel services." See Collette v. Unique Vacations, Inc., No. 9861, 2004 WL 757840, at *3 (Mass. App. Div. Mar. 30, 2004) (expressing doubt that reservation booking company qualifies as a "seller of travel services" under 940 Mass. Code Regs. 15.02).

Even were the Court to assume that HomeAway is a "seller of travel services" subject to the consumer protection regulations, the CDA bars this claim. Treating HomeAway as a "seller of

travel services" requires the Court to treat HomeAway as the
seller of the third party owned and operated Jewels of Belize
vacation property.  To hold HomeAway liable for misleading or
inaccurate material (e.g., images from another property listing
appearing on a different HomeAway website being duplicated on
the VBRO.com Jewels of Belize rental account) in the third party
created Jewels of Belize listing contravenes Section 230 of the
CDA.  As noted above, CDA immunity attaches when a plaintiff
attempts to hold a website operator liable for content created
by "another information content provider."  47 U.S.C. §
230(c)(1).

     The Plaintiffs circumvent CDA immunity for their other
consumer protection claims by resting those allegations on
HomeAway's own Basic Rental Guarantee.  In so narrowing their
claims, however, the Plaintiffs have limited themselves to
relying only on the language of HomeAway's own content.  Hiam's
claim based on a violation of 940 Code of Massachusetts
Regulations section 15 fails for two additional reasons.  First,
Hiam impermissibly conjures up a promise to verify listings.  As
discussed below, the Guarantee does not contain an implied
representation to pre-screen or verify postings.  Second, this
Court concludes that the Guarantee is not materially misleading
under section 15.03(2).  The regulation provides specific
examples of representations that mislead in a "material

respect."  These include, but are not limited to, "the name,
location, or amenities of any lodging; . . . the terms of any
insurance policy offered by or through the seller of travel
services; [and] the terms of any cancellation or refund policy
of any seller of travel services that may apply to a consumer's
purchase of travel services . . . ."  940 Mass. Code Regs.
15.03(2).  As discussed _infra_, the Guarantee's refund
eligibility requirements are not misleading, and the Guarantee
does not speak to the accuracy of any listing, including the
name or location of the property available for rent.
Furthermore, HomeAway's Terms and Conditions emphatically
disclaim any such accuracy.

Accordingly, this Court concludes that HomeAway is not a
seller of travel services, and that the CDA bars any such
treatment.  Count VII therefore fails as matter of law.

### 2.   Chapter 93A Violations Where HomeAway is Not a Seller of Travel Services (Count II) (Hiam)

Because HomeAway is not a seller of travel services, it is
entitled to judgment as matter of law.  Hiam's claims allegedly
arising from HomeAway's Guarantee and Terms and Conditions fail
because Hiam has failed to prove essential elements of his case,
"necessarily render[ing] all other facts immaterial."  _Celotex
Corp._ v. _Catrett_, 477 U.S. 317, 323 (1986).  HomeAway is also

entitled to summary judgment on the Plaintiffs' claims based on HomeAway's Privacy Policy.

> ### a.   HomeAway's Basic Rental Guarantee: Promise to Investigate Fraud

Under Massachusetts law, an unfair practice or "objectionable conduct must attain a level of rascality that would raise an eyebrow of someone inured to the rough and tumble of the world of commerce." Levings v. Forbes & Wallace, Inc., 8 Mass. App. Ct. 498, 504 (1979); see also Cummings v. HPG Int'l, Inc., 244 F.3d 16, 25 (1st Cir. 2001) ("[A] defendant's allegedly unfair conduct 'must at least come within shouting distance of some established concept of unfairness.'" (quoting Massachusetts Sch. of Law at Andover, Inc. v. American Bar Ass'n, 142 F.3d 26, 42 (1st Cir. 1998))).  "Whether a party's conduct amounts to an unfair or deceptive act or practice is matter of fact." Bridge Over Troubled Waters, Inc. v. Argo Tea, Inc., No. CV 15-13610-WGY, 2016 WL 7238793, at *5 (D. Mass. Dec. 14, 2016) (citing Spence v. Boston Edison Co., 390 Mass. 604, 616 (1983)).

Notwithstanding the Plaintiffs' broad, unsupported assertion that using the word "guarantee" in the refund policy's title transforms it into a sweeping promise that every third-

party listing is accurate or verified,[5] HomeAway's Basic Rental

Guarantee meets all of the factors indicative of a genuine

guarantee.  940 Mass. Code Regs. 3.03(1).  The Guarantee

identifies and defines what it purports to protect: internet

fraud.  Basic Rental Guarantee 4, 5.  It further sets forth the

requirements for claiming protections, id. at 4, 6-8, as well as

examples of conduct not protected, id. at 5-6.  The first four

words of the Basic Rental Guarantee establish what HomeAway, the

"guarantor", undertakes to do: reimburse qualifying users.  Id.

at 4.  The language of the Guarantee is clear and unambiguous.

Count II purportedly arises out of HomeAway's promise to

investigate fraud complaints in connection with the Basic Rental

Guarantee.  Hiam contends that HomeAway's investigations were

fictitious.  Pl.'s Opp'n 9.  The undisputed facts, however, show

HomeAway investigated Hiam's and Hutchens's complaints.  VRBO's

customer support attempted to contact the Jewels of Belize

property manager and forwarded Hiam's and Hutchens's complaints

to the contact on file.  See Dayva Graham Correspondence, VRBO

E-mails, Aff. Amanda McGee, Ex. 9 ("Hutchens Case Comments"),

---

[5] The Plaintiffs claim that "[t]he issue of the legal effect
or nature of a consumer guarantee -- whether such a 'guarantee'
is an implied representation or promise -- is an issue that
should be decided only after CDA immunity . . . ."  Pls.'
Surreply 1-2.  The Plaintiffs do not provide, nor does there
appear, any case law to support that approach.  Here, however,
the Court has analyzed CDA immunity first as a matter of
analytic approach. It need not have done so.

ECF No. 41-9.  In fact, the Plaintiffs concede this in their
complaint.  SAC ¶ 66.  In response to Hutchens's report that the
Jewels of Belize estate was "half constructed dumps," HomeAway
conferred with Google Earth but acknowledged that its
investigation came up with insufficient material to confirm or
deny Hutchens's description of the property.  Case Comments 3.
HomeAway also investigated Hiam's complaint.  A U.S. Trust and
Security Specialist described the steps she took, results of
that effort, and further action she would be taking in response
to Hiam's formal complaint, and explained that the situation did
not satisfy HomeAway's definition of internet fraud because the
company "determined this owner to be a real person who has had
successful stays in the past . . . ."  VRBO E-mails 2-3.
Further, the Specialist searched the New York Secretary of
State's database and discovered that the mailing address Hiam
provided to HomeAway was registered to Spiegel & Utrera.  Id. at
2.  Two months later, another Specialist explained why --
according to HomeAway's definition -- the Jewels of Belize
listing was not fraudulent: an authorized property owner created
the rental listing and the property was legitimate.  Id. at 1.
Therefore, the undisputed facts show that HomeAway fulfilled its
promise to investigate.

   The Plaintiffs expand this promise to investigate into a
promise to investigate reasonably.  The Plaintiffs assert that

if HomeAway's conduct can even qualify as an investigation, such investigation was a "sham."  Pls.' Opp'n 9.  The Plaintiffs' characterization does not make this issue trial-worthy.  First, as matter of law, the language of the Guarantee does not contain such a promise as the Plaintiffs import.  The Plaintiffs seem to trace a promise to conduct a reasonable investigation from the Guarantee's definition of internet fraud as a refund for a rental property "where such listing is subsequently determined to be, in HomeAway's reasonable discretion, fictitious . . . ."  Id.  The word "reasonable" pertains to HomeAway's "discretion" in investigating (i.e., what to investigate and how), not the investigation itself.  Basic Rental Guarantee 5.  HomeAway is not stepping into the shoes of a jury and determining whether, as matter of fact, there has been fraud in the legal sense of the term.  Instead, HomeAway is attempting to discern, in its reasonable discretion, whether the property (1) exists as a property available for rent or (2) was advertised with the intention of defrauding perspective renters into believing that the property was available for rent.  Id.; see also Doe v. Trustees of Boston Coll., No. 15-CV-10790, 2016 WL 5799297, at *12 (D. Mass. Oct. 4, 2016) (Casper, J.) (declining to "second guess the thoroughness or accuracy of a university investigation, so long as the university complied with the terms

of its policies").  Therefore, the Guarantee's language promises
to investigate for those two elements and no more.

Even if a trier of fact could conclude that the Guarantee
promises a reasonable investigation, the Plaintiffs will be
unable to meet their burden of proof with the facts contained in
the record.  Besides their colorful descriptions, the Plaintiffs
have no such support, and discovery in this matter is complete.
See Sensing v. Outback Steakhouse of Fla., LLC, 575 F.3d 145,
152 (1st Cir. 2009).  The record before this Court simply cannot
sustain Hiam's allegation that there was no investigation or
that the investigation was a sham.  Thus, summary judgment is
appropriate because "after adequate time for discovery . . .
[Hiam] fails to make a showing sufficient to establish the
existence of an element essential to [his] case, and on which
[he] will bear the burden of proof at trial."  Celotex Corp.,
477 U.S. at 322.

### b.   HomeAway's Basic Rental Guarantee: Promise to Verify Third-Party Posts

The Guarantee's language simply cannot be read as a promise
that HomeAway undertakes "some measure of verification and
polic[es]" third-party content.  SAC ¶ 78.  The Plaintiffs imply
that merely by using the word "guarantee," in the title of its
Basic Rental Guarantee, HomeAway represented that it verified
third-party listings.  Pls.' Opp'n 14.

The Plaintiffs cite to the definition of "guarantee" provided in Massachusetts consumer protection regulations, 940 Mass. Code Regs. 3.01.  The Plaintiffs' recitation, however, removes a key component of the definition: that it governs the term's usage in the regulations.  Pls.' Surreply 2.  The regulation reads, "[t]he terms 'warranty' or 'guarantee' or any term connoting a warranty or guarantee as used in 940 CMR 3.00 are synonymous."  940 Mass. Code Regs. 3.01 (emphasis added). The omitted portion, "as used in 940 CMR 3.00," is not appositive, as the Plaintiffs suggest.  Rather, the phrase stands to thwart a reading that "warranty" and "guarantee" are synonymous generally, by restricting such a reading only to the words as used in the regulations.

Recently, another Session of this Court addressed the Plaintiffs' argument that "[a] consumer obviously understands a 'guarantee' to be some form of promise or representation or warranty . . . ."  Pls.' Opp'n 13.  In Carlson v. The Gillette Company, No. CV 14-14201-FDS, 2015 WL 6453147 (D. Mass. Oct. 23, 2015) (Saylor, J.), the court addressed the statement on a Duracell battery pack that the batteries were "GUARANTEED for 10 YEARS in storage."  Id. at *1.  The court dismissed the assertion that the batteries were guaranteed not to fail, stating that "a 'guarantee' is a form of an express warranty . . . .  Accordingly, to an objectively reasonable consumer, the use

of the term 'guaranteed' on the battery packaging would not be
interpreted as anything beyond a promise to . . . refund . . . a
failed battery." Id. at *5-6 (internal citations omitted).
Following that reasoning, the Basic Rental Guarantee is nothing
more than a promise to refund. Objectively, the word
"guarantee" does not create a promise to pre-screen rental
listings. Additionally, "guarantee" does not speak to the
accuracy of rental postings. Finally, under Massachusetts law,
using the term "guarantee" does not constitute a deceptive act.
Id. at *6.

    The Plaintiffs offer a lively example to illustrate what a
consumer assumes from the word "guarantee". Pls.' Opp'n 12-13 &
n.10. The Plaintiffs describe a deli that "guarantees" its
offerings are kosher, and if they are not, the deli will refund
the customer. Id. Using this hypothetical, the Plaintiffs
suggest that a reasonable customer would not believe that he has
to confirm whether the deli's food was in fact kosher. Id.
From the kosher deli analogy, the Plaintiffs argue that HomeAway
treats the Basic Rental Guarantee as a form of "insurance,"
rather than a guarantee. Id. at 12-13. The Court agrees that
the Guarantee reads like an insurance policy because it offers a
refund. Guarantee Terms 4-8. Such an after-the-event
reimbursement is precisely what "[a] rational consumer" expects
from an insurance policy. Indeed, the Plaintiffs describe an

instance where a disgruntled user referred to the Guarantee's "insurance" in a complaint to HomeAway as being "as much a scam as this listing was on your website."  Pls.' Facts ¶ 22.

The flaw in the Plaintiffs' argument, however, is that it stretches any implied promise in the Guarantee too far -- all the way to pre-screening verification.  Id. at 14.  The Guarantee's language implies a retroactive investigation into whether the situation at issue qualifies as internet fraud under HomeAway's definition.  The first four words of the Guarantee make it clear: HomeAway is offering a refund.  Guarantee Terms 4.  That any promised investigation generates a refund further demonstrates that HomeAway is not holding itself out as verifying listings.  Refunds are remedial and come after an event has occurred.  Furthermore, HomeAway makes clear that in order to qualify for a refund, an individual must follow certain eligibility requirements.

While "in general, the question whether certain language creates an express warranty is reserved for the trier of fact," Sullivan v. Young Bros. & Co., 91 F.3d 242, 247 (1st Cir. 1996), as matter of law, the Court concludes here that the language cited by the Plaintiffs does not create the alleged promises. See Trustees of Boston Coll., 2016 WL 5799297, at *10-12; Stuto v. Corning Glass Works, No. CIV. 88-1150-WF, 1990 WL 105615, at *5-7 (D. Mass. July 23, 1990) (Wolf, J.).

To the extent that the Guarantee creates an express warranty, it "must be construed in a manner consistent with language purporting to negate or limit [the] warrant[y]." Gilbert & Bennett Mfg. Co. v. Westinghouse Elec. Corp., 445 F. Supp. 537, 546 (D. Mass. 1977) (Julian, J.).  No rational customer could read the Guarantee and believe that HomeAway is promising to verify all rental listings.  This is especially true where the customer would read the Guarantee in tandem with HomeAway's Terms and Conditions.  But see Stuto, 1990 WL 105615, at *7 (noting that the guarantee by its own terms limited the scope of any expressed warranty).  HomeAway's Terms and Conditions state: "We have no duty to pre-screen content posted on the Site by members"; "we assume no responsibility to verify property listing content . . . and travelers are solely responsible for verifying the accuracy of such content and descriptions"; "TO THE FULLEST EXTENT PERMISSIBLE BY LAW, WE MAKE NO REPRESENTATIONS OR WARRANTIES OF ANY KIND"; and "WE EXPRESSLY DISCLAIM ANY EXPRESS OR IMPLIED WARRANTIES, INCLUDING . . . FITNESS FOR A PARTICULAR PURPOSE OR ACCURACY."  Terms & Conditions 14-15, 18.  Furthermore, Hiam himself understood that HomeAway made no promises to verify vacation rental postings. He concedes, "VRBO doesn't have any duty to look at . . . content before it's posed on the site [and] they have no obligation to [prescreen]."  Hiam Dep. 78:15-24.  "In short,

this is not a case where defendant's advertisements created a
guarantee whose meaning or scope could have been misunderstood
by a reasonable consumer."   Stuto, 1990 WL 105615, at *7.

### c.   HomeAway's Privacy Policy

Hiam also asserts that HomeAway repeatedly violated its own
Privacy Policy, which constitutes an unfair or deceptive trade
practice.  SAC ¶¶ 75(3), 77.  This claim fails for the same
reason that the Guarantee does not support an unfair or
deceptive trade practice: the evidence in the record does not
allow a rational factfinder to conclude that HomeAway's conduct
was unfair or deceptive.

According to its Privacy Policy, HomeAway may share user
information "to enforce [its] policies, or where [it is]
permitted to do so by applicable law, such as in response to a
request by a law enforcement or governmental authority, or in
connection with actual or proposed litigation . . . ."  Privacy
Policy 32.  The parties agree that this was the Privacy Policy
in place when the Plaintiffs attempted to reserve the Jewels of
Belize estate.  This language makes no implied or express
promise that HomeAway will disclose user information.  It is
within HomeAway's complete discretion whether -- if ever -- it
will share personal data.  Terms & Conditions 11 ("[T]here may
be circumstances where we are nevertheless legally obligated . .
. to provide information relating to your listing in order to

comply with government bodies in relation to investigations,
. . . and we may choose to comply with or disregard such
obligation in our sole discretion.").  Based on these terms, a
reasonable fact-finder could not conclude that HomeAway has
violated its Privacy Policy.

To the extent that Hiam seeks to hold HomeAway liable as a
"seller of travel services," his consumer protection claims are
barred by the CDA.  The Guarantee contains a promise to
investigate complaints of internet fraud.  The evidence shows
that HomeAway fulfilled this promise.  The Guarantee also
promises a refund to eligible users, but because Hiam sent money
via wire transfer, he does not qualify for the refund and
HomeAway therefore did not ignore its refund promise.  An
objective reader of the Guarantee cannot construe it to make a
representation, implied or otherwise, that HomeAway will pre-
screen or verify third-party content.  Finally, there is no
promise in the Privacy Policy that HomeAway will disclose user
information.  As no promise exists, HomeAway's withholding that
information does not contravene the Privacy Policy; and
therefore, HomeAway's conduct is not unfair or deceptive.
Accordingly, counts II and VII fail as matter of law.

   **D.  Concert of Action (Count III) (Hiam)**

Hiam also seeks to hold HomeAway liable for concert of
action.  SAC ¶¶ 81-85.  Under a concert of action theory, "a

defendant who has an agreement with another to perform a tortious act or to achieve a tortious result, may be liable to a plaintiff, even if that defendant was not the cause-in-fact of the injury." Santiago v. Sherwin-Williams Co., 794 F. Supp. 29, 31 & n.2 (D. Mass. 1992) (Tauro, J.), aff'd, 3 F.3d 546 (1st Cir. 1993).  Such "an agreement may be inferred if the conduct of the defendants suggests a tortious implied meeting of the minds." Id.

Concert of action claims arise where a defendant has been identified as the cause of the plaintiff's harm, and the plaintiff seeks to hold the identified defendant's co-conspirators liable. Id. at 31.  Although generally, plaintiffs must identify at least one defendant as the cause-in-fact of their injury, some courts have allowed plaintiffs to proceed despite their inability to identify the defendant who caused the injury. Id. at 31-32.  "The Massachusetts Supreme Judicial Court has indicated that it would relax the identification requirement only in circumstances that would limit a defendant's liability to the harm it actually caused." Id. at 32 (citing Payton v. Abbott Labs, 386 Mass. 540 (1982)).  If, however, that requirement were relaxed here, a website operator could be liable for harm caused by third-party content, a result that contravenes Section 230 of the CDA.

At its core, Hiam's concert of action claim is based on content created by a third party and conduct that is coextensive with publishing.  Hiam faults HomeAway for "concealing the identities of the fraudsters after learning of their fraud . . . [and] expressly adopting the fraudulent content of the [Jewels of Belize] listing . . . ."  SAC ¶ 84 (emphasis added).  The CDA bars Hiam's claim for two reasons.  First, it is "well established that notice of the unlawful nature of the information provided is not enough to make it the service provider's own speech . . . . Section 230 immunity applies even after notice of the potentially unlawful nature of the third-party content."  Universal Commc'n Sys., Inc., 478 F.3d at 420.  Thus, First Circuit case law precludes Hiam's concert of action claim insofar that it attempts to impose liability for HomeAway's alleged notice of the fraudulent rental listing.  Second, "expressly adopting" plainly treats HomeAway as both a publisher and speaker.  This conduct is equivalent to publishing, or re-publishing, which is a traditional editorial function.  Zeran, 129 F.3d at 330.

As Congress has expressly barred such claims, HomeAway is entitled to statutory immunity for providing the contact information available on the Jewels of Belize listing.  Moreover, the Court dismisses Hiam's concert of action theory insofar as he again claims that HomeAway violated its Privacy

Policy.  As previously noted, there are no factual disputes about HomeAway's Privacy Policy or its actions in relation to that policy.

### E.   Fraud and Misrepresentation (Count IV)

The Plaintiffs bring a joint claim for fraud and misrepresentation.  SAC ¶¶ 86-93.  To recover for common law fraud, the plaintiff must "prove that the defendant made a false representation of a material fact with knowledge of its falsity for the purpose of inducing the plaintiff to act thereon, and that the plaintiff relied upon the representation as true and acted upon it to his damage."  Barrett Assocs., Inc. v. Aronson, 346 Mass. 150, 152 (1963).  Here, HomeAway made no false representation.

As discussed above, the Plaintiffs' allegation that HomeAway "expressly guarantees each and every listing posted on its website," SAC ¶ 87, is inaccurate.  First, there is no express language in the Guarantee, Privacy Policy, or Terms and Conditions.  Further, customer support agents and Trust and Security Specialists did not make any express guarantee in private communications with the Plaintiffs.  Second, the only guarantees made in HomeAway's own content are a promise to investigate internet fraud and a promise to make refunds subject to certain, clear eligibility requirements.

The Plaintiffs are correct that HomeAway's promise to investigate complaints of internet fraud comes from the Basic Rental Guarantee and HomeAway employees expressly referred to investigations in e-mail communications with the Plaintiffs. See, e.g., VRBO E-mails 1-2.  But again, the Plaintiffs claim "no investigation of any kind took place . . . ."  SAC ¶ 89. The record shows that not only did HomeAway investigate the Plaintiffs' complaints, but it also reviewed related complaints from other users.

Whereas a misrepresentation claim under Chapter 93A does not require Hiam to show that HomeAway knew the representation was false, under a common-law fraud claim, the Plaintiffs must prove this knowledge element.  See Cummings, 244 F.3d at 22-23. Again, the relevant representation here is a promise to investigate.  As HomeAway conducted such an investigation, there was no false representation.  HomeAway performed as it promised it would, and the Plaintiffs have offered nothing to suggest HomeAway knew its representation was false.  Because the Plaintiffs are unable to establish the essential element of knowledge, HomeAway is entitled to summary judgment on this count.  Celotex Corp., 477 U.S. at 322.

**F.  Deceptive Trade Practices under the Colorado Consumer
Protection Act (Count VI) (Hutchens)**

Brooke Hutchens, a citizen of Colorado, brings an action
for deceptive trade practices under the Colorado Consumer
Protection Act.  SAC ¶¶ 2, 98-101.  Hutchens asserts that
HomeAway engaged in a deceptive practice "by purporting to
'guarantee' every third party's rental listing against fraud
. . . ."  Id. ¶¶ 99, 100.[6,7]  To prove that HomeAway violated the
Colorado Consumer Protection Act, Hutchens must show

> (1) that the defendant engaged in an unfair or
> deceptive trade practice; (2) that the challenged

---

[6] Hutchens's claim adopts Hiam's Chapter 93A allegations
verbatim.  See SAC ¶ 78.

[7] Hutchens asserts that HomeAway engaged in a deceptive
trade practice because it

> [a]dvertises or otherwise represents that goods or
> services are guaranteed without clearly and
> conspicuously disclosing the nature and extent of the
> guarantee, any material conditions or limitations in
> the guarantee which are imposed by the guarantor, the
> manner in which the guarantor will perform, and the
> identity of such guarantor . . . . Guarantees shall
> not be used which under normal conditions could not be
> practically fulfilled or which are . . . of such a
> nature as to have the capacity and tendency of
> misleading purchasers or prospective purchasers into
> believing that the goods or services so guaranteed
> have a greater degree of serviceability, durability,
> or performance capability in actual use than is true
> in fact.  The provisions of this paragraph (r) apply
> not only to guarantees but also to warranties, to
> disclaimer of warranties, to purported guarantees and
> warranties, and to any promise or representation in
> the nature of a guarantee or warranty . . . .

Colo. Rev. Stat. Ann. § 6-1-105(1)(r).

practice occurred in the course of defendant's
business . . . ; (3) that it significantly impacts the
public as actual or potential consumers of the
defendant's goods, services, or property; (4) that the
plaintiff suffered injury in fact to a legally
protected interest; and (5) that the challenged
practice caused the plaintiff's injury.

Rhino Linings USA, Inc. v. Rocky Mountain Rhino Lining, Inc., 62
P.3d 142, 146-47 (Colo. 2003).  Moreover, to violate Colorado's
consumer protection statute, the defendant must "knowingly
make[] a misrepresentation or make[] a false representation that
has the capacity to deceive."  Id. at 148; see also HealthONE of
Denver, Inc. v. UnitedHealth Group, Inc., 805 F. Supp. 2d 1115,
1120 (D. Colo. 2011).

The requirements to prove a deceptive trade practice under
the Colorado Consumer Protection Act are almost identical to
those which must be proved under the Massachusetts' consumer
protection statute.  As discussed above, the website operator
did not default on any representation it made expressly, through
customer support agents, or impliedly, through the Basic Rental
Guarantee.  HomeAway conducted an investigation in response to
complaints from the Plaintiffs and others.  Because HomeAway
performed as it promised it would, its representation was not
false.  Therefore, HomeAway did not engage in a deceptive trade
practice, and this Court grants summary judgment in favor of
HomeAway on count VI.

### G.   Unjust Enrichment (Count V)

The Plaintiffs also argue that they are entitled to recover the payment HomeAway received from the creators of the Jewels of Belize listing.  SAC ¶¶ 95-97.  The Plaintiffs seem to allege that through the fee Jewels of Belize paid HomeAway in exchange for posting to VRBO.com, HomeAway "receiv[ed] funds procured by fraud from the plaintiffs," which the website operator retained despite representing that it would use this money to refund the Plaintiffs under the Guarantee.  Id. ¶ 97.  The Third Restatement of the Law of Restitution and Unjust Enrichment states: "A person who obtains benefit by misappropriating financial assets, or in consequence of their misappropriation by another, is liable to the victim of the wrong."  Pls.' Opp'n 18. HomeAway asserts that the Plaintiffs' unjust enrichment claim fails "because there are no facts indicating that [the Plaintiffs] transferred any funds to HomeAway."  Def.'s Mem. 19. The Plaintiffs clarify that their unjust enrichment claim sounds in tort, not contract.  Pls.' Surreply 4-5.

"Under Massachusetts law, the question of whether a claim sounds in contract or tort depends upon the nature and essence of the claim."  Cambridge Literary Props., Ltd. v. W. Goebel Porzellanfabrik G.m.b.H. & Co. Kg., 448 F. Supp. 2d 244, 262 (D. Mass. 2006) (Gertner, J.), aff'd, 510 F.3d 77 (1st Cir. 2007). Asserting that the claim arises from a contract is convincing.

HomeAway's Terms and Conditions establish a "clickwrap" agreement under which, by accessing VRBO.com, users enter a binding agreement with HomeAway.  Terms & Conditions 10.  The Plaintiffs acknowledge that they entered into a binding agreement by using VRBO.com.  Pls.' Opp'n 7 & n.4.  In addition, the Plaintiffs present their unjust enrichment claim in connection with HomeAway's Basic Rental Guarantee.  SAC ¶ 96.

Before reaching the issue of whether HomeAway has been unjustly enriched, however, the Court must determine whether the Plaintiffs have an adequate remedy at law.  See, e.g., Trustees of Boston Coll., 2016 WL 5799297, at *31 ("Where plaintiffs have adequate remedies at law, such as contract law, a claim for unjust enrichment cannot be considered."); Taylor Woodrow Blitman Const. Corp. v. Southfield Gardens Co., 534 F. Supp. 340, 347 (D. Mass. 1982) (Nelson, J.).  "The[] mere availability [of the Chapter 93A count] is a bar to a claim of unjust enrichment." Fernandes v. Havkin, 731 F. Supp. 2d 103, 114 (D. Mass. 2010) (Bowler, M.J.).  This is true regardless of the disposition of Hiam's Chapter 93A claim.  See Adrion v. Knight, 2009 WL 3152885, at *1 n.1 (D. Mass. Sept. 28, 2009) (Stearns, J.) ("[T]he availability of an adequate remedy at law (whether successful or not) precludes an equitable claim of unjust enrichment.").  Here, Hiam's claim under Chapter 93A and

Hutchens's allegation under Colorado's consumer protection statute bar recovery for unjust enrichment.

**III. CONCLUSION**

For the foregoing reasons, this Court GRANTS HomeAway's motion for summary judgment as to all counts of the Plaintiffs' Second Amended Complaint.  Judgment shall enter for HomeAway.

**SO ORDERED.**

/s/ William G. Young
WILLIAM G. YOUNG
DISTRICT JUDGE